Linda K. **HENDRICKS**, Petitioner,

v.

The **INDUSTRIAL CLAIM APPEALS OFFICE OF the STATE OF COLORADO, American Stores, and American Motorists Insurance Company, Respondents.**

No. 90CA0273.

Colorado Court of Appeals,
Div. III.

Nov. 8, 1990.

Rehearing Denied Dec. 20, 1990.

Certiorari Denied May 13, 1991.

Robert R. Kayne, Longmont, for petitioner.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Carolyn A. Boyd, and Jeanne Labuda, Asst. Attys. Gen., Denver, for respondent Industrial Claim Appeals Office.

White & Steele, P.C., Ted A. Krumreich, Denver, for respondents American Stores and American Motorists Ins. Co.

Opinion by Judge NEY.

Linda K. Hendricks, claimant, contests a final order of the Industrial Claim Appeals Office (Panel) determining her average weekly wage, awarding past due temporary disability benefits, and terminating ongoing temporary disability benefits. We affirm in part, set aside in part, and remand.

The claimant sustained an admitted back injury in December 1986. Following a period of total temporary disability, she returned to work on a part-time basis under physical restrictions. In June 1988, claimant requested a hearing on the issues of past due temporary disability benefits, medical benefits, vocational rehabilitation, and permanent disability. The following month, claimant's orthopedic physician reported that he could not discount the possibility of surgery and that it was too early to determine a permanent disability rating.

At the subsequent administrative hearing, on November 2, 1988, the Administrative Law Judge (ALJ) conducted a lengthy discussion with counsel to determine the issues in controversy. Both parties agreed that the question of maximum medical improvement was premature and that the only issues in controversy were past due disability benefits and the proper computation of claimant's average weekly wage.

At the conclusion of the hearing, the ALJ directed the parties to submit position papers on the contested issues. Although the claimant's entitlement to ongoing temporary disability benefits was not contested at the hearing, and although neither party's position paper addressed maximum medical improvement, the ALJ nevertheless terminated temporary disability benefits on the ground that claimant had reached maximum medical improvement on October 19, 1988. On review, the Panel affirmed the ALJ's order.

I.

■ The claimant contends that it was a violation of procedural due process for the ALJ and the Panel to disregard the parties' express stipulation that the issue of maximum medical improvement was premature. We agree.

■ The fundamental requisites of due process are notice and the opportunity to be heard. *See Nesbit v. Industrial Commission*, 43 Colo.App. 398, 607 P.2d 1024 (1979). If, as here, an administrative adjudication turns on questions of fact, due process requires that the parties be apprised of all the evidence to be submitted and considered, and that they be afforded a reasonable opportunity in which to confront adverse witnesses and to present evidence and argument in support of their position. *Puncec v. Denver*, 28 Colo.App. 542, 475 P.2d 359 (1970).

In rejecting claimant's argument that she was denied due process, the Panel reasoned that the issue of maximum medical improvement was implicit in the question of claimant's entitlement to ongoing temporary disability benefits. However, the transcript of the November 1988 hearing establishes that the claimant's entitlement to ongoing temporary disability benefits was not contested at the hearing. Furthermore, the ALJ accepted the parties' stipulation that the issue of maximum medical improvement was premature. Although the ALJ thereafter questioned claimant concerning her physical condition, neither the ALJ's limited questioning, nor the claimant's responses thereto, were sufficient to rescind the parties' stipulation or to alert the claimant to the ALJ's intention to disregard the stipulation and render a deci-

sion on maximum medical improvement. *See Raffaelo v. Industrial Commission,* 670 P.2d 805 (Colo.App.1983).

Because claimant was not afforded the opportunity to confront adverse evidence or to submit evidence or argument in support of her position, we conclude that she was deprived of procedural due process and that the order terminating temporary disability benefits must be set aside.

## II.

■ Claimant next contends that the Panel erred in computing temporary partial disability benefits based upon post-injury increases in her hourly wage rate rather than the wage rate in effect at the time of injury. We agree that the calculation of these benefits was in error.

At the time of her injury, claimant was employed an average of 41 hours per week at an hourly wage of $6.65. Following a period of total temporary disability, claimant returned to light duty work for the respondent employer on a part-time basis. For the next seventeen months, as a result of her injury, claimant was unable to work more than 33 and one-half hours per week, an 18 percent reduction in her pre-injury work capacity. However, during this same period of time, claimant received three merit raises which increased her hourly wage rate from $6.65 at the time of injury, to $7.23 during her final seven months of employment.

In determining partial temporary compensation, the ALJ simply subtracted the total of claimant's post-injury earnings, including her wage increases, from her average weekly wage at the time of injury and awarded sixty-six and two-thirds percent of the difference. Consequently, although claimant's diminished work capacity remained constant at 18 percent because of her post-injury wage raises, claimant's partial disability benefits were progressively reduced from $35.47 per week at the time of injury to $22.51 per week for the last seven months of her employment.

On review, the Panel affirmed the ALJ's method of computation.

We agree with claimant's contention that the computation utilized by the ALJ and the Panel failed to compensate her adequately for her diminished earning capacity.

Colorado courts have not previously addressed the effect of post-injury earnings on the computation of temporary partial disability benefits. However, our courts have ruled that post-injury earnings are not dispositive in determining loss of earning capacity for purposes of permanent partial disability benefits. *See Vail Associates, Inc. v. West,* 661 P.2d 1187 (Colo.App.1982), *aff'd,* 692 P.2d 1111 (Colo.1984).

Although benefits for temporary and permanent partial disability are computed under different statutory formulas, *see* §§ 8–51–103 and 8–51–108, C.R.S. (1986 Repl.Vol. 3B) (now codified at §§ 8–42–106 and 8–42–110, C.R.S. (1990 Cum.Supp.)), both types of benefits are designed to compensate an injured worker for loss of earning capacity. *See Ski Depot Rentals, Inc. v. Lynch,* 714 P.2d 516 (Colo.App.1985).

Section 8–51–103 provides:

"In case of temporary partial disability, the employee shall receive sixty-six and two-thirds percent *of the impairment of his earning capacity* during the continuance thereof, not to exceed a maximum of eighty percent of the state average weekly wage per week." (emphasis added)

■ The term "earning capacity," as used in the Workers' Compensation Act, means the loss of the ability to earn, not simply lost wages. *See Eastman Kodak Co. v. Industrial Commission,* 725 P.2d 107 (Colo.App.1986). Accordingly, while in some instances loss of earning capacity can be computed simply by subtracting post-injury earnings from the average weekly wage at the time of injury, in other instances a comparative wage approach will not accurately reflect the impairment of earning capacity attributable to the injury. This is true whether the disability is permanent or temporary.

As stated in 2 A. Larson, *Workmen's Compensation Law* § 57.21(d) (1989):

"Unreliability of post-injury earnings may be due to a number of things; increase in general wage levels since the time of accident; claimant's own greater maturity or training; longer hours worked by claimant after the accident; payment of wages disproportionate to capacity out of sympathy to claimant and the temporary and unpredictable character of post-injury earnings.

"The ultimate objective of the disability test is, by discounting these variables, to determine the wage that would have been paid in the open labor market under normal employment conditions to claimant as injured, taking *wage levels, hours of work, and claimant's age and state of training as of exactly the same period used for calculating actual wages earned before the injury.*" (emphasis added)

*See also Gold Kist, Inc. v. Casey,* 495 So.2d 1129 (Ala.Civ.App.1986); *Altamirano v. Industrial Commission,* 22 Ariz. App. 379, 527 P.2d 1096 (1974); *Coty v. Town of Millinocket,* 423 A.2d 524 (Me. 1980). Although these principles are stated in terms of permanent disability, we adopt the same reasoning for calculating temporary disability.

In *State Fund v. Lyttle,* 151 Colo. 590, 380 P.2d 62 (1963) our supreme court ruled that the "base" figure for computing temporary partial disability is the claimant's average weekly wage at the time of injury. *Lyttle,* however, did not address the other factors relevant to determining post-injury impairment of earning capacity. *See Jefferson County Public Schools v. Dragoo,* 765 P.2d 636 (Colo.App.1988); *St. Mary's Church & Mission v. Industrial Commission,* 735 P.2d 902 (Colo.App.1986).

■ We hold that if a simple comparison between pre-injury and post-injury wages would distort the loss of earning capacity attributable to the injury, then the claimant's post-injury wages must reflect the wage level in effect at the time of injury. *See Arizona Public Service Co. v. Industrial Commission,* 16 Ariz.App. 274, 492 P.2d 1212 (1972).

Other similar variables should also be considered so as to afford a fair and equitable basis of comparison. For instance, if a worker customarily worked overtime prior to his injury, but was no longer able to work overtime because of his injury, this would be a factor, separate and apart from wage comparisons, to consider in establishing post-injury loss of earning capacity.

Accordingly, the award of temporary partial compensation here must be set aside and the cause remanded with directions to the Panel to exclude the claimant's post-injury merit raises from the computation of benefits and consider any other relevant factors in this calculation.

III.

Claimant also contends that her average weekly wage should have included the reasonable value of her employee purchase discounts. However, we agree with the Panel that it was within the ALJ's discretion as fact finder to discredit the claimant's testimony concerning the value of her employee purchase discount. *See Levy v. Everson Plumbing Co.,* 171 Colo. 468, 468 P.2d 34 (1970).

We decline to address claimant's remaining contentions concerning other employee benefits as those contentions were not properly raised before the Panel. *See Apache Corp. v. Industrial Commission,* 717 P.2d 1000 (Colo.App.1986).

That part of the order concerning an award for temporary partial disability benefits is set aside, and the cause is remanded for redetermination of the amount awarded consistent with the views expressed herein. That part of the order concerning a determination of maximum medical improvement is set aside as premature. The remainder of the order is affirmed.

METZGER and RULAND, JJ., concur.