**PARKER FIRE PROTECTION DISTRICT and Colorado Compensation Insurance Authority, Petitioners,**

v.

**Cheryl L. POAGE, the Industrial Claim Appeals Office of the State of Colorado, and Director, Division of Workers' Compensation, Respondents.**

**No. 91CA1405.**

Colorado Court of Appeals,
Div. I.

July 16, 1992.

Rehearing Denied Aug. 13, 1992.

Certiorari Denied Jan. 4, 1993.

Carolyn A. Boyd, Denver, for petitioners.

Eley & Eley, Sally L. MacLuckie, Denver, for respondent Cheryl L. Poage.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Jill M. M. Gallet, Asst. Atty. Gen., Denver, for respondent Industrial Claim Appeals Office.

No appearance for Director, Div. of Workers' Compensation.

Opinion by Judge HUME.

Petitioners, the Parker Fire Protection District and the Colorado Compensation Insurance Authority, seek review of the final order of the Industrial Claim Appeals Panel, which ruled that Cheryl L. Poage, claimant, was entitled to an award of temporary disability benefits at the maximum rate. We affirm.

In June 1989, claimant injured her knee while working as an unpaid volunteer firefighter for the District. She has been unable to work as a firefighter since the accident, and her knee has remained permanently impaired after reaching maximum medical improvement.

Claimant was also employed by the District in two paid, part-time positions. As a result of her injury, she was unable to work in her paid positions for two ten-day periods following surgery, but otherwise lost no work time or wages.

Under § 8–40–202(1)(a)(II), C.R.S. (1991 Cum.Supp.), persons accidentally injured while serving as volunteer firefighters are entitled to compensation at the maximum rate provided by the Workers' Compensation Act.

Accordingly, the Administrative Law Judge (ALJ) awarded claimant maximum permanent partial disability benefits and temporary total disability benefits at the maximum rate for the periods when she was unable to work in her paid positions. However, the ALJ awarded no temporary disability benefits for the periods when claimant was able to work in her paid positions, reasoning that she was not temporarily disabled because she lost no wages. Claimant sought review by the Panel, which reversed the ALJ's denial of temporary disability benefits.

Petitioners contend that, since claimant lost no wages, she was not entitled to temporary disability benefits for the time she was able to work in her paid positions. We disagree.

■ If considered as a purely theoretical matter, petitioners' argument that claimant could not be temporarily disabled during periods when she lost no wages has some merit. The purpose of temporary disability benefits is to compensate an injured employee for loss of earning capacity during the recovery period after a compensable injury. Thus, ordinarily, a worker who loses no wages has no temporary disability.

■ Moreover, the amount of wages lost as a result of an injury generally provides a reliable measure of the injured party's diminution of earning capacity. *See State Compensation Insurance Fund v. Lyttle*, 151 Colo. 590, 380 P.2d 62 (1963); *Eastman Kodak Co. v. Industrial Commission*, 725 P.2d 107 (Colo.App.1986). *But see Hendricks v. Industrial Claim Appeals Office*, 809 P.2d 1076 (Colo.App.1990) (temporary partial disability benefits are intended to compensate for loss of earning capacity, which includes more than lost wages).

■ However, § 8–40–202(1)(a)(II) creates an exception to the usual measure of calculating temporary disability benefits.

The statute expressly provides that the rate of compensation for persons accidentally injured while serving as volunteer firefighters "shall be at the maximum rate provided" by the Workers' Compensation Act. The same statutory language was in effect at the time of claimant's injury. *See* § 8–41–106(1)(a)(II), C.R.S. (1986 Repl.Vol. 3B).

The version of the Act in effect when claimant was injured, like the current version, provided maximum rates of compensation for the two categories of temporary disability. *Compare* Colo.Sess.Laws 1988, ch. 49, § 8–51–102 at 379 and Colo.Sess. Laws 1987, ch. 51, § 8–51–103 at 388 *with* §§ 8–42–105 and 8–42–106, C.R.S. (1991 Cum.Supp.). Also, § 8–40–202(1)(a)(II) does not distinguish between temporary and permanent disability; it requires compensation at the maximum rate without regard to the type of disability. Accordingly, we reject petitioners' argument that claimant's compensation for temporary disability is dependent on actual wage loss.

Under both the former and current versions of the Act, the rate of compensation for temporary partial, temporary total, and permanent total disability is ordinarily a percentage of the injured worker's wages. *See* §§ 8–51–102 and 8–51–103, *supra*, and §§ 8–42–105 and 8–42–106, C.R.S. (1991 Cum.Supp.). Thus, under petitioners' theory, injured volunteer firefighters who lose wages from low paying employment would receive less than the maximum rate of compensation for temporary partial, temporary total, and permanent total disability. And, those who lose no wages because they have no paid employment would receive no compensation, contrary to the plain language of § 8–40–202(1)(a)(II), which requires compensation at the maximum rate.

Under the unambiguous language of the statute in question, the rate of compensation of injured volunteer firefighters is independent of their actual wages and actual wage losses from other employment. Hence, the effect of § 8–40–202(1)(a)(II) is to impute to a claimant such as the one here a constructive wage so that she may

receive workers' compensation benefits at the maximum rate permitted.

The primary object in construing a statute is to give effect to the intent of the General Assembly as expressed in the statutory language. *Farmers Group, Inc. v. Williams,* 805 P.2d 419 (Colo.1991).

Our construction of the statute is consistent with the clear legislative intent to encourage this kind of volunteer public service by providing maximum compensation for disabling injuries sustained in that service. To the extent that § 8–40–202(1)(a)(II) gives injured volunteer firefighters a windfall, such a result has been mandated by the General Assembly.

The order is affirmed.

PIERCE, J., concurs.

ROTHENBERG, J., dissents.

Judge ROTHENBERG dissenting.

I respectfully dissent.

I agree with the initial decision by the ALJ and with petitioners' contention that, since she lost no wages, claimant was not entitled to temporary disability benefits for the time she was able to work in her paid positions.

In order to be entitled to the maximum rate of compensation for temporary disability, it is axiomatic that an injured firefighter must first have a temporary disability for which compensation can be awarded. The purpose of temporary disability benefits is to compensate injured employees for wage loss during the recovery period after a compensable injury. Under the version of the Act in effect when claimant was injured as well as the current version, the rate of compensation for temporary disability is a percentage of the difference between the injured worker's wages pre and post injury. *See* Colo.Sess.Laws 1988, ch. 49, § 8–51–102 at 379 and Colo.Sess.Laws 1987, ch. 51, § 8–51–103 at 388 (current versions at §§ 8–42–105 and 8–42–106, C.R.S. (1991 Cum.Supp.)). *See Denny's Restaurant, Inc. v. Husson,* 746 P.2d 63 (Colo.App.1987). This assumes that the claimant's wages at the time of the injury were higher than his or her post-injury

wages, and that no modifications to a claimant's employment status or wages have occurred. *See Hendricks v. Industrial Claim Appeals Office,* 809 P.2d 1076 (Colo.App.1990) (where claimant's injury resulted in 18 per cent reduction in pre-injury work capacity, but claimant's pay raises resulted in no loss of total wages, it was error to simply compare her pre-injury and post-injury wages). Thus, this court said in *Hendricks:*

We hold that if a simple comparison between pre-injury and post-injury wages would distort the loss of earning capacity attributable to the injury, then the claimant's post-injury wages must reflect the wage level in effect at the time of injury.

Here, claimant lost no wages. Nor, did she suffer a reduction in pre-injury work capacity as did the claimant in *Hendricks v. Industrial Claim Appeals Office, supra.* For these reasons, I conclude that the ALJ correctly found this claimant has no temporary disability. And, in my view, § 8–40–202(1)(a)(II), C.R.S. (1991 Cum. Supp.), which provides that the rate of compensation of persons accidentally injured while serving as volunteer firefighters "shall be at the maximum rate provided" by the Workers' Compensation Act, does not apply here.

Although I am also concerned about future cases involving injured volunteer firefighters who lose wages from low paying employment, or those who lose no wages because they are unemployed, I believe that § 8–42–102(3), C.R.S. (1991 Cum. Supp.), when read in conjunction with § 8–40–202(1)(a)(II), allows the division *in such cases* to "fairly determine such employee's average weekly wage." Further, I do not agree that concern for such future claimants should govern the result here where a simple comparison between this claimant's pre-injury and post-injury wages reflects, without distortion, that she lost no wages. *Hendricks v. Industrial Claim Appeals, supra.*

I would set aside the Panel's decision and reinstate the ALJ's order denying temporary disability benefits for those periods

during which this claimant was employed at the same hours and wage rate as before her injury.