The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
June 17, 2021

**2021COA84**

**No. 20CA1523, *Delta County Memorial Hospital v. ICAO* —**

**Labor and Industry — Workers' Compensation — Benefits — No**

**Recovery from Employee — Violations — Each Day a Separate**

**Offense**

In a matter of first impression, a division of the court of appeals considers whether medical billing sent to an injured worker in violation of section 8-42-101(4), C.R.S. 2020 (prohibiting medical providers from billing injured workers for medical care arising out of admitted or determined compensable claims), can constitute a "continuing violation" within the meaning of section 8-43-305, C.R.S. 2020. The division concludes that penalties under section 8-43-304(1), C.R.S. 2020, can only be imposed for the discrete days on which bills were sent in violation of section 8-42-101(4). In

addition, the division concludes that where, as here, a non-party entered a general appearance to contest a penalty claim, the non-party consented to the personal jurisdiction of the Office of Administrative Courts.

COLORADO COURT OF APPEALS    **2021COA84**

Court of Appeals No. 20CA1523
Industrial Claim Appeals Office of the State of Colorado
WC No. 5-065-586

Delta County Memorial Hospital,

Petitioner,

v.

Industrial Claim Appeals Office of the State of Colorado, Robert C. Adams
d/b/a Bob Adams Trucking, and Edith Keating,

Respondents.

ORDER AFFIRMED IN PART, SET ASIDE IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division IV
Opinion by JUDGE HAWTHORNE*
Terry and Navarro, JJ., concur

June 17, 2021

Ritsema & Lyon, P.C., Douglas L. Stratton, Fort Collins, Colorado, for Petitioner
Delta County Memorial Hospital

No Appearance for Respondent Industrial Claim Appeals Office

No Appearance for Respondent Robert C. Adams d/b/a Bob Adams Trucking

Law Office of Donald Kaufman, Donald Kaufman, Glenwood Springs, Colorado;
The McCarthy Law Firm, P.C., John D. McCarthy, Arvada, Colorado for
Respondent Edith Keating

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art.
VI, § 5(3), and § 24-51-1105, C.R.S. 2020.

¶ 1     This workers' compensation action raises two questions: (1) whether a non-party to a case — here, a hospital — can be penalized for violating a provision of the Workers' Compensation Act (Act): and (2) in a matter of first impression, whether discrete hospital bills can give rise to a continuing violation. For the reasons addressed below, we do not reach the first question and answer the second question in the negative.

¶ 2     The hospital, Delta County Memorial Hospital (the hospital), violated section 8-42-101(4), C.R.S. 2020, by billing its patient, claimant Edith Keating, for medical procedures related to her work injury. An administrative law judge (ALJ) imposed penalties against the hospital even though the hospital had not been joined as a party to the action under C.R.C.P. 19(a). The hospital challenges the ALJ's order, arguing that penalties cannot be imposed against a non-party. But we need not answer this question. By entering a general appearance in the proceedings, the hospital voluntarily submitted itself to the jurisdiction of the Office of Administrative Courts (OAC). The OAC thereby acquired personal jurisdiction over the hospital, and we affirm the decision of the Industrial Claim

Appeals Office (Panel) upholding this portion of the ALJ's order on this basis.

¶ 3     Claimant cross-appeals the Panel's decision, contending that the penalty amount affirmed by the Panel should have been greater. Penalties under the Act accrue daily. *See* § 8-43-304(1), C.R.S. 2020. The Panel limited the daily penalty to those specific dates on which the hospital issued medical bills to claimant after learning that her injuries were work-related. But claimant maintains that the hospital's violation should be regarded as a "continuing violation" for which daily penalties can be imposed over a range of dates. We agree with the Panel that each bill constitutes a distinct violation that cannot be cured. Such violative billing practices therefore do not fit within the definition of a continuing violation. Penalties could be imposed, then, only for those dates on which the hospital improperly billed claimant. We therefore conclude that the Panel correctly limited the penalty and affirm the imposition of penalties on discrete dates when the hospital billed claimant. However, we set aside that portion of the Panel's order excluding two collection attempts by the hospital from claimant's penalty award.

# I.    Background

¶ 4    Claimant worked for Robert C. Adams, doing business as Bob Adams Trucking.  In 2017, she sustained serious injuries while loading a pickup truck onto a tilt-bed tow truck.  After initially being treated at another hospital, claimant received ongoing treatment for her injuries at the hospital.

¶ 5    Claimant sought workers' compensation benefits from her employer, Mr. Adams, who has not entered an appearance.  In October 2018, an ALJ found claimant's claim compensable and awarded her medical and disability benefits against Mr. Adams, who lacked statutorily required workers' compensation insurance.  The ALJ ordered Mr. Adams to deposit $130,000.00 with the Division of Workers' Compensation (division) "to secure the payment of all unpaid compensation and benefits awarded" and file a bond with the division in the same amount.  Claimant testified that Mr. Adams never paid any funds to her; never paid any of her medical providers, including the hospital; and, to the best of her knowledge, never paid any sum to the division as ordered.

¶ 6    Claimant provided the hospital a copy of the order.  Having not received payment for the services it rendered, the hospital still

attempted to collect the debt from claimant. It admittedly sent bills directly to her. But, as her attorney explained to the hospital in a letter dated April 10, 2019, once an ALJ has found the claim compensable, section 8-42-101(4) makes it "unlawful . . . for a medical provider to bill an injured worker" for medical services treating the work-related injury. The hospital's billing manager testified that she became aware of the letter and order in May 2019, and a note dated May 7, 2019, in the hospital's file for claimant's account indicates it had received a copy of claimant's "Work Comp lawsuit."

¶ 7     Despite being advised of the law and the order, on June 13, 2019, counsel for the hospital responded to claimant's counsel, writing that because Mr. Adams never paid into the division's fund "as ordered by the Court," the hospital had no other available avenue to recoup its expenses and its "only recourse in recovering its costs/fees is through continued collection efforts against [claimant]." The record shows that the hospital thereafter sent claimant several billing statements between June 18 and September 12, 2019.

¶ 8     Soon after receiving the first hospital bill, claimant filed an application for hearing with the division seeking penalties against the hospital.  She first filed a hearing application on June 18, 2019, naming the hospital as the respondent in the caption.  A copy was sent to the hospital and its counsel the same day.  The division rejected that application because the hospital was not the respondent-employer.  Claimant filed and served on the hospital and its counsel a second application for hearing on June 19, 2019, listing both the hospital and Robert C. Adams as respondents, but it, too, was rejected.  Finally, the division accepted claimant's third application for hearing, filed June 20, 2019.  The third application identified Robert C. Adams as the respondent, and under its endorsement of the issue of penalties stated,

> 8-42-101(4) DELTA MEMORIAL HOSPITAL[:] No Recovery From Employee, Once there has been an admission of liability or the entry of a final order finding that an employer or insurance carrier is liable for the payment of an employee's medical costs or fees, a medical provider shall under no circumstances seek to recover such costs or fees from the employee.

5

As with the two rejected applications for hearing, claimant's counsel served the third application on the hospital and its counsel that day.

¶ 9     At the ensuing hearing, the hospital's counsel argued that it had not been properly joined and that penalties therefore could not be imposed against it. Noting that the penalties statute, section 8-43-304(1), may be asserted against an employee, employer, insurer or "any other person," the ALJ disagreed. The ALJ instead concluded that the hospital violated the Act by sending claimant medical bills despite being informed of the ALJ's October 2018 order finding the claim compensable. Because the ALJ considered the hospital's actions a "continu[ing] statutory violation," she imposed penalties of $750 per day "for the period of June 13, 2019 through and including October 9, 2019" — i.e., from the date the hospital's counsel responded to claimant's counsel's letter advising the hospital of the October 2018 order and the statutory prohibition against billing claimant through the date of the hearing before the ALJ — a period of 119 days, resulting in a total penalty award of $89,250.

¶ 10    On review, the Panel affirmed that claimant had properly asserted her penalty claim against the hospital, that the hospital need not be joined as a party to have penalties imposed against it, and that claimant had pleaded her penalty claim with sufficient specificity.  But the Panel concluded that because the hospital could not cure its violation after sending the bills, the violation was not "continuing" as the ALJ had found.  And because the violations were not continuing, penalties could only be imposed for those dates on which the hospital improperly billed claimant.  So the Panel remanded the matter to the ALJ for additional findings determining which specific bills violated section 8-42-101(4).

¶ 11    On remand, the ALJ found that the hospital improperly billed claimant on eight separate occasions: June 18, July 2, July 8, July 18, July 31, August 7, August 13, and September 12, 2019.  The ALJ also found "two additional instances of the respondent hospital attempting to collect from the claimant when two bills were forwarded to collections on September 20, 2019."  Having found these ten discrete instances of violative billing, the ALJ imposed penalties of $750 per day for each of the ten instances, totaling $7,500 in penalties.

¶ 12     The Panel affirmed the imposition of penalties on the eight dates on which the hospital sent bills to claimant but set aside that portion of the ALJ's order awarding penalties for the two bills forwarded to collections on September 20, 2019.  The bills sent to collections, the Panel determined, were beyond the scope of claimant's application for hearing.  A penalty cannot be assessed "for activity not properly noticed" in an application for hearing.  The Panel then amended the ALJ's order "to apply a daily penalty to eight instances of violations," resulting in a total penalty award of $6,000.  The hospital and claimant both appeal the Panel's order.

## II.    The Hospital's Appeal

¶ 13     The hospital contends that (1) the ALJ and the Panel erred by finding that the hospital, a non-party to the action, could be assessed penalties without being joined as an indispensable party under C.R.C.P. 19(a), and thus imposing the penalties violated its right to due process; and (2) the ALJ lacked personal jurisdiction over it to assess penalties against a non-party.  We are not persuaded by either contention.

¶ 14     The Act says,

> Once there has been an admission of liability or the entry of a final order finding that an employer or insurance carrier is liable for the payment of an employee's medical costs or fees, *a medical provider shall under no circumstances seek to recover such costs or fees from the employee.*

§ 8-42-101(4) (emphasis added).  The hospital does not dispute that it violated this provision.  It challenges only its failure to be joined as a party, asserting that because it was not a party it could not adequately protect its rights.

¶ 15    The Act's penalties statute expressly permits imposing penalties against anyone who violates its provisions.  The relevant portion states,

> Any employer or insurer, or any officer or agent of either, or any employee, *or any other person who violates articles 40 to 47 of this title 8*, or does any act prohibited thereby, or fails or refuses to perform any duty lawfully enjoined within the time prescribed by the director or panel, for which no penalty has been specifically provided, or fails, neglects, or refuses to obey any lawful order made by the director or panel or any judgment or decree made by any court as provided by the articles shall be subject to such order being reduced to judgment by a court of competent jurisdiction *and shall also be punished by a fine of not more than one thousand dollars per day for each offense . . . .*

9

§ 8-43-304(1) (emphasis added).

## A. Personal Jurisdiction

¶ 16     We first address the personal jurisdiction issue. The hospital argues that because the ALJ lacked personal jurisdiction over it, she should not have proceeded with the penalties hearing against it. Although the hospital concedes that it received notice of the hearing and application, it argues that the notice "was inadequate in that [the division] wrongfully changed the caption from the underlying application for hearing that did not list the hospital as a party." We conclude that regardless of the language used in the caption, the hospital submitted itself to personal jurisdiction by entering a general appearance in the proceedings and defending itself on the claim's merits.

¶ 17     "[P]ersonal jurisdiction involves a court's authority over a particular individual." *Currier v. Sutherland*, 218 P.3d 709, 714 (Colo. 2009). It "is the court's power to subject a particular defendant to the decisions of the court." *Rombough v. Mitchell*, 140 P.3d 202, 204 (Colo. App. 2006). "[P]ersonal jurisdiction over a defendant is required before a court may enter enforceable orders." *Giduck v. Niblett*, 2014 COA 86, ¶ 9.

¶ 18    "The exercise of personal jurisdiction over a defendant is proper 'if fair and adequate notice is provided to the defendant, and if the defendant has sufficient minimum contacts with the state seeking jurisdiction.'" *Currier*, 218 P.3d at 714-15 (quoting *Stone's Farm Supply, Inc. v. Deacon*, 805 P.2d 1109, 1113 (Colo. 1991), *overruled on other grounds by Chapman v. Harner*, 2014 CO 78).

¶ 19    Importantly, where, as here, a party or person submits to the court's personal jurisdiction over it, no further inquiry is necessary. *See Stone's Farm Supply*, 805 P.2d at 1113 n.6 ("If the court lacks personal jurisdiction over a defendant, the defendant may consent to jurisdiction by a voluntary appearance, i.e., by contesting the case without challenging personal jurisdiction."). "[W]hen a defendant who purposefully directed his activities at a forum seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Rome v. Reyes*, 2017 COA 84, ¶ 15.

¶ 20    In a situation analogous to the hospital's appearance before the ALJ, the *Rombough* division concluded that the trial court had personal jurisdiction over the defendant in that case because "(1) she was properly served; (2) she was alleged to have committed

11

tortious acts within the state; and (3) she filed an answer and asserted counterclaims."  140 P.3d at 204.

> A party enters a general appearance and consents to the personal jurisdiction of a court by seeking relief in a form that acknowledges the personal jurisdiction of the court.  Two requirements must be met: 1) the party must have knowledge of the pending proceeding; and 2) the party must intend to appear.

*In re Marriage of Jeffers*, 992 P.2d 686, 689 (Colo. App. 1999).

¶ 21 The record establishes that the hospital consented to the ALJ's personal jurisdiction over it.  First, the hospital was named in the application for hearing in the penalty section as anticipated by the provision in section 8-43-304(1) allowing penalties to be pursued against "any other person."  Second, it admittedly received multiple notices of the action.  And third, it entered a general appearance in the proceeding before the ALJ by responding to the application for hearing, filing a "Case Information Sheet," defending itself on the merits in the hearing (including presenting evidence and questioning witnesses on both sides), and filing a post-hearing position statement with the ALJ.

¶ 22 True, a non-party may appear specially to contest a court's personal jurisdiction over it and such special appearance may not

result in the court's acquiring personal jurisdiction over the non-party.

> A special appearance is one made for the purpose of urging jurisdictional objections. If a defendant separately or in conjunction with a motion going only to the jurisdiction invokes the power of the court on the merits, or moves to dismiss the action, or asks relief which presupposes that jurisdiction has attached, this constitutes a general appearance.

*Everett v. Wilson,* 34 Colo. 476, 480, 83 P. 211, 212 (1905) (citations omitted).

> The usual method or procedure, common in the district court when process issues to one claiming non-jurisdiction, is for the one summoned to appear specially in the court and to move that process be quashed as to him. The court in such cases is vested with power to determine whether it has jurisdiction.

*City of Thornton v. Pub. Utils. Comm'n,* 154 Colo. 431, 435, 391 P.2d 374, 376 (1964). But the hospital did not enter a special appearance at the hearing to solely contest personal jurisdiction. Indeed, its counsel never mentioned the phrase "personal jurisdiction" in its appearance, instead discussing at length whether it had "standing" to contest the penalty claim. Counsel then proceeded to mount a full defense on the merits of the penalty claim

13

by presenting witnesses, evidence, and argument challenging claimant's allegations. The hospital thus entered a general, not a special, appearance, and it thereby consented to the OAC's personal jurisdiction over it.

¶ 23 Finally, we note that the case the hospital cites to support its personal jurisdiction contention does not stand for the proposition it advances. *See Barker v. Dist. Ct.*, 199 Colo. 416, 420, 609 P.2d 628, 631 (1980). Instead, *Barker* was dismissed because "there [was] no legal entity named as a party defendant. Absent a controversy between legal entities, there [was] no subject matter to be litigated and the court [was] without jurisdiction to proceed." *Id.*

¶ 24 Because we conclude that the hospital consented to the OAC's personal jurisdiction over it, we necessarily reject its personal jurisdiction contention. *See Rombough,* 140 P.3d at 204.

## B. Joinder

¶ 25 Because the hospital appeared and defended itself — thus consenting to the OAC's personal jurisdiction over it — whether it was properly joined in the action is inconsequential. But the hospital argues that C.R.C.P. 19(a) mandates joinder of indispensable parties — those whose rights could be injuriously

affected by any decision — and that it is necessarily an indispensable party because penalties can be, and were, imposed against it. The posture of this case convinces us that the hospital suffered no harm, even if it was not properly joined under C.R.C.P. 19.

¶ 26    C.R.C.P. 19(a) states as follows:

> A person who is properly subject to service of process in the action shall be joined as a party in the action if: (1) *In his absence* complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may: (A) As a practical matter impair or impede his ability to protect that interest or (B) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. If he has not been so joined, the court shall order that he be made a party. If he should join as a plaintiff but refuses to do so, he may be made a defendant, or, in a proper case, an involuntary plaintiff. If the joined party objects to venue and his joinder would render the venue of the action improper, he shall be dismissed from the action.

(Emphasis added.) Even if the hospital should have been joined as a party because its rights could be negatively impacted in its absence, it appeared generally, thus consenting to the OAC's

personal jurisdiction over it, and defended itself on the claim's merits before any penalty was entered against it. In other words, its rights were not negatively impacted in its absence because *it was not absent* from the proceeding. So we need not determine whether C.R.C.P. 19 applied under the Act.

## C. Due Process

¶ 27 Due process and personal jurisdiction are inextricably linked. "In fact, 'the personal jurisdiction inquiry under Colorado law collapses into the traditional due process inquiry.'" *Rome*, ¶ 22 (quoting *Grynberg Petroleum Co. v. Evergreen Energy Partners, LLC*, 485 F. Supp. 2d 1217, 1222-23 (D. Colo. 2007)). The hospital contends that its right to due process was violated when the ALJ permitted claimant's request for penalties against it to proceed even though it was not a party to the action. Again, we disagree.

¶ 28 "The fundamental requisites of due process are notice and the opportunity to be heard." *Franz v. Indus. Claim Appeals Off.*, 250 P.3d 755, 758 (Colo. App. 2010) (quoting *Hendricks v. Indus. Claim Appeals Off.*, 809 P.2d 1076, 1077 (Colo. App. 1990)). Due process requires "that the parties be apprised of all the evidence to be submitted and considered, and that they be afforded a reasonable

opportunity in which to confront adverse witnesses and to present evidence and argument in support of their position." *Hendricks*, 809 P.2d at 1077. The due process clause protects against the infringement of individual property and liberty interests — such as the imposition of penalties against an entity — without notice and an opportunity to be heard. *See Whiteside v. Smith*, 67 P.3d 1240, 1247 (Colo. 2003). But because it is a flexible standard, no specific procedure is required "as long as the basic opportunity for a hearing and judicial review is present." *Ortega v. Indus. Claim Appeals Off.*, 207 P.3d 895, 899 (Colo. App. 2009); *see also Kroupa v. Indus. Claim Appeals Off.*, 53 P.3d 1192, 1195 (Colo. App. 2002); *Wecker v. TBL Excavating, Inc.*, 908 P.2d 1186, 1188 (Colo. App. 1995).

¶ 29 The hospital received claimant's three applications for hearing — two of which were rejected by the division — notifying the hospital that claimant sought penalties against it and that a hearing would be held on the matter. After the third application's acceptance, the division notified the hospital of the scheduled hearing date. The hospital's representative appeared at that hearing with counsel, who offered documentary evidence,

questioned the hospital's witnesses, cross-examined claimant's witnesses, and orally set out the hospital's position for the ALJ. Finally, after the hearing, the hospital submitted a position statement detailing its arguments. Given that the due process clause guarantees notice and the right to be heard, the hospital was afforded all the requisite procedural protections. *See Hendricks*, 809 P.2d at 1077.

¶ 30    The two Panel decisions the hospital cites to support its argument do not persuade us to reach a different conclusion. *See Caro v. Johnson Controls, Inc.*, W.C. No. 4-786-424, 2010 WL 2019859 (Colo. I.C.A.O. May 12, 2010); *Weber v. Shiloh Homes*, W.C. No. 4-540-459, 2005 WL 3125896 (Colo. I.C.A.O. Nov. 14, 2005). The hospital argues that these Panel decisions establish that ALJs cannot proceed against non-parties and that the Panel's decision in this case was contrary to its own precedent. We are not persuaded.

¶ 31    First, we are not bound by the Panel's decisions. *See Olivas-Soto v. Indus. Claim Appeals Off.*, 143 P.3d 1178, 1180 (Colo. App. 2006). And second, each of the Panel cases is distinguishable. In *Weber*, the aggrieved non-party, a physician whose fees were

18

challenged as excessive by the claimant, was not included on the certificate of mailing nor present at a pre-hearing conference addressing the motion affecting him.  2005 WL 3125896, at *1.  Nor was he included on the ensuing orders' certificates of service.  *Id.* Unlike the hospital here, the physician in *Weber* received neither notice nor the opportunity to be heard, as required by the due process clause.

¶ 32     Likewise, in *Caro*, the claimant attempted to seek penalties directly against the division for allegedly refusing "to provide a medical examiner with expertise in the requested medical field to evaluate the claimant's injury."  2010 WL 2019859, at *2.  But the Panel did not hold that a penalty against the division was improper because the division had not been joined as a party; instead, the Panel ruled that it did not need to determine whether the ALJ had jurisdiction over the division because the claimant's claim and the record before it were "insufficient as a matter of law to support any order providing relief."  *Id.* at *3.  *Caro* never answered the question the hospital poses here and is inapposite to our analysis.

¶ 33     We conclude that the hospital was not deprived of due process when the ALJ considered and ruled on claimant's request for penalties against it.  *See Hendricks,* 809 P.2d at 1077.

### III.   Claimant's Cross-Appeal

¶ 34     Claimant contends that the Panel improperly ruled that the statutory violations the hospital committed could not be classified as continuing violations.  She argues that the hospital's actions "constituted a continuous and unrelenting violation of [section] 8-42-101(4), subject to daily penalties from June 13, 2019 through October 9, 2019."  As explained above, if the hospital is subject to penalties for a continuing violation during the period identified, claimant would receive $83,000 more in penalties than if penalties are assessed only for the eight dates on which the hospital improperly billed claimant.  Claimant argues that ample evidence supported the ALJ's original order finding the violation to be continuing and that the Panel exceeded its authority by engaging in factfinding when it re-categorized the violations as discrete, not continuing, acts.  We are not persuaded.

¶ 35     But we agree with claimant's alternative assertion that ample evidence supported an award of penalties against the hospital for

the two instances in which the hospital sent claimant's bills to a collection agency.

## A.     Continuing Violation

¶ 36     Section 8-43-305, C.R.S. 2020, permits daily penalties to be imposed against an individual or entity for failure to comply with an order.  It states as follows:

> Every day during which any employer or insurer, or officer or agent of either, or any employee, or any other person fails to comply with any lawful order of an administrative law judge, the director, or the panel or fails to perform any duty imposed by articles 40 to 47 of this title shall constitute a separate and distinct violation thereof.  In any action brought to enforce the same or to enforce any penalty provided for in said articles, such violation shall be considered cumulative and may be joined in such action.

§ 8-43-305.  "The purpose of section 8-43-305 is to address 'ongoing conduct.'"  *Crowell v. Indus. Claim Appeals Off.*, 2012 COA 30, ¶ 12 (quoting *Spracklin v. Indus. Claim Appeals Off.*, 66 P.3d 176, 178 (Colo. App. 2002)).  When violative "conduct is ongoing, imposition of a daily penalty is required."  *Id.*

¶ 37     As *Crowell* explained, continuing violations typically include a delay in acting and can therefore "be cured by simply taking the

required action." *Id.* at ¶ 14. *Crowell* identified numerous examples of failures to act that would result in daily penalties for continuing violations, including the following:

- failure to pay medically necessary bills, *Associated Bus. Prods. v. Indus. Claim Appeals Off.*, 126 P.3d 323, 324, 326 (Colo. App. 2005), *abrogated on other grounds by Colo. Dep't of Lab. & Emp. v. Dami Hosp., LLC*, 2019 CO 47M;

- failure to provide medical treatment, *Pena v. Indus. Claim Appeals Off.*, 117 P.3d 84, 86 (Colo. App. 2004);

- failure to timely file a final admission of liability, *Hum. Res. Co. v. Indus. Claim Appeals Off.*, 984 P.2d 1194, 1196 (Colo. App. 1999); and

- failure to provide a medical report to claimant, *Diversified Veterans Corp. Ctr. v. Hewuse*, 942 P.2d 1312, 1313 (Colo. App. 1997).

The common thread running through these examples is that, in each case, the offense could be corrected by taking the required action. Simply put, "the difference between a one-time violation

22

and a continuing violation hinges on whether the violation is subject to being cured by subsequent action." *Crowell,* ¶ 13.

¶ 38 Claimant describes the hospital's patient billing practices as an ongoing act requiring no "affirmative action . . . to generate individual bills." She paints a picture of the hospital's billing practices as being "on continuous autopilot," and argues that the billing cycle could be cured "by simply rescinding its invoices and halting all other internal and external . . . collection processes."

¶ 39 But claimant's characterization omits two crucial distinctions between this situation and the continuing violations discussed in *Crowell.* First, the hospital did not issue claimant a bill every day. In contrast, continuing failures to pay for or provide medical care, like those described in *Crowell,* occur *each and every day* that a medical bill goes unpaid or treatment is delayed. *See id.* at ¶ 14; *Associated Bus. Prods.,* 126 P.3d at 324, 326; *Pena,* 117 P.3d at 86. Although the hospital's billing process generated several bills and did so until it intervened to stop the system, the hospital only sent claimant violative bills on eight discrete occasions.

¶ 40 Second, once a bill has been generated and sent, the violative deed has been committed and cannot be undone. In other words,

improperly sending a bill to a claimant for covered care cannot be cured because the bill cannot be "unsent." *See Crowell*, ¶¶ 13, 14. In contrast, a failure to pay a medical bill can be corrected once the bill is paid. Given these differences, we conclude that the hospital violated section 8-42-101(4) on the dates it or its agent generated and sent a medical bill to claimant, but that it did not commit a continuing violation within the scope of section 8-43-305.

¶ 41 Claimant also maintains that the Panel overstepped its authority by rejecting the ALJ's initial finding that the hospital's violations were continuing in nature. True, the Panel is bound by the ALJ's factual determinations if those findings are supported by substantial evidence in the record. § 8-43-301(8), C.R.S. 2020; *Pella Windows & Doors, Inc. v. Indus. Claim Appeals Off.*, 2020 COA 9, ¶ 44. But, when an ALJ misconstrues or misapplies the law, neither the Panel nor we are so bound. *See Paint Connection Plus v. Indus. Claim Appeals Off.*, 240 P.3d 429, 431 (Colo. App. 2010) ("[A]n agency's decision that misconstrues or misapplies the law is not binding.").

¶ 42 The ALJ misconstrued the nature of the bills and consequently misapplied section 8-43-305. Because the hospital could not take

back the bills once they had been sent, it could not cure its violation. Even though the ALJ found that the hospital committed a continuing violation, that finding was based on a misapplication of the law, so the Panel did not err by setting that finding aside. *See id.*

### B. Bills Sent to Collection Agency

¶ 43 Claimant alternatively contends that the Panel erred by determining that the two instances in which a collection agency attempted to collect payment from her could not serve as bases for penalties. The Panel set aside the ALJ's penalty award for the two collection attempts on the grounds that (1) the hospital sent the bills to the collection agency before it knew that claimant's claim had been ruled compensable; and (2) claimant failed to specifically plead that her penalties claim was premised on the collection attempts. It noted that the "assessment of a penalty for activity not properly noticed is prohibited by statute, . . . the OAC rules, . . . and standards of procedural due process." We agree with claimant that sufficient record evidence supported the ALJ's finding that these two collection attempts constituted incidents of improper billing in violation of section 8-42-101(4).

¶ 44 The Act mandates that "any application for hearing for any penalty pursuant to subsection (1) of this section . . . shall state with specificity the grounds on which the penalty is being asserted." § 8-43-304(4). While claimant's statement is broad, it put the hospital on notice that its attempts to collect medical fees from claimant after the ALJ had found the claim compensable violated the Act. Claimant's application for hearing cast a wide net by paraphrasing section 8-42-101(4)'s prohibition against seeking "to recover such costs or fees from the employee." The September 2019 collection attempts fit under the umbrella of violative acts described in the application for hearing. We conclude that the application sufficiently notified the hospital that its billing of claimant, including any collection attempts, subjected it to penalties.

¶ 45 Also, collection attempts fall within the scope of behavior the Act prohibits. The Act forbids medical providers from "seek[ing] to recover" medical costs and fees once liability for a claim attaches. § 8-42-101(4). The statute does not limit the prohibited acts to bills mailed by a medical provider or affirmative actions taken by a medical provider to collect on a bill. Instead, the Act broadly incorporates any action that "seek[s] to recover" fees and costs.

Collection attempts are certainly efforts to recover fees and costs and thus fall under the rubric of prohibited acts. True, the hospital submitted the bills to the collection agency before it knew of the ALJ's compensability finding, but no evidence in the record indicates the hospital contacted the collection agency to stop those activities on learning of the order. And it appears undisputed that a collection attempt was "last reported" in September 2019.

¶ 46 This evidence supports the ALJ's finding that there were "two additional instances of [the hospital] attempting to collect from the claimant when two bills were forwarded to collections on September 20, 2019." Where substantial evidence supports an ALJ's factual finding, the Panel is bound by it and may not set it aside. *See Paint Connection Plus*, 240 P.3d at 431. We conclude that the Panel erred when it set aside this finding.

## IV. Conclusion

¶ 47 We therefore affirm the Panel's order holding that daily penalties, but not a continuing violation, could be assessed against the hospital; set aside that portion of the Panel's order rejecting penalties for the bills sent to a collection agency; and remand the case to the Panel with instructions to reinstate the ALJ's award of

penalties for the two days collection attempts were instigated against claimant.

JUDGE TERRY and JUDGE NAVARRO concur.